### JOT GUNTER v. TEXAS LAND AND MORTGAGE COMPANY, LIMITED.

#### No. 3533.

1. **Constitution—Regulating Caption of Laws.**—Section 35 of article 3 of the Constitution of the State provides that "no bill (except general appropriation bills, which may embrace the various subjects and accounts for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title." Construing this, *held:*

1. It must be deemed settled that this provision is mandatory, and hence binding upon every department of the government.

2. It has been steadily held that a title which in substance is a compliance with the requirements of the Constitution is sufficient.

3. It can not be said that its subject is expressed in the title when the title does no more than to furnish a reference to some other writing, document, or law from which by search the true purpose of the bill may be discovered.

4. Under like provisions courts of other States have held that the title to an amendatory law having application to a specific subject, and not to a body of laws enacted by one act, must embrace the title of the act to be amended in order to give the subject of the law, unless the title of the amendatory act does this in some other manner.

5. A mere reference to something else for information as to the subject of the bill is not a compliance with the Constitution.

2. **Alien Land Law of 1891.**—The title of the act relating to property rights of aliens, approved April 13, 1891, is "An act to amend title 3, articles 9 and 10, and to add articles 10a, 10b, 10c, 10d, 10e, 10f, 10g, and 10h, and to repeal all laws in conflict herewith." This does not name the body of laws by its title or otherwise which it was the purpose of the Legislature to amend, nor does it otherwise designate the subject in reference to which it was intended to legislate.

3. **Same.**—"There is nothing in the title of the act under consideration from which the subject may be known, and were we to hold it a compliance with the requirement of the Constitution we would deny to that law the effect which its letter and spirit show it was intended to have."

APPEAL from Ellis.    Tried below before Hon. ANSON RAINEY.
This is an agreed case.    The facts are fully stated in the opinion.

*Lewis M. Dabney*, for appellant.—1.   (1) The right of a foreign corporation to do business in a State is derived from the rule of comity, which may be withdrawn by legislative enactment.    Taylor on Priv. Corp., secs. 383, 388; Mora. on Priv. Corp., secs. 966, 971.

(2) A permit to do a particular business, for which money is paid the State, does not constitute a vested right in the licensee, but is revocable at the option of the State, and is merely a method of taxation. Cool. on Const. Lim., sec. 383, and note 4; secs. 495, 496.

(3) The grant of the right to the citizen of another sovereignty to do business in Texas for an extended and definite period is a privilege revocable by the Legislature at its option.    Const., art. 1, sec. 17.

2.   (1) A mortgage or trust deed is a conveyance, and under the terms of the Act of the Legislature of Texas, approved April 13, 1891 (Gen. Laws, p. 82), conveys to the mortgagee or beneficiary an interest in the premises incumbered.    Ins. Co. v. Clarke, 79 Texas, 25; Rapalje's Law Dic., title, "Interest."

(2) In construing a statute, the intention of the Legislature is to be reached by taking all parts of the statute together, and giving to it that effect which will harmonize all parts thereof.    Lufkin v. Galveston, 63 Texas, 437; Erwin v. Blanks, 60 Texas, 583.

(3) Words are to be taken in their ordinary meaning when a technical construction would defeat the intention of the Legislature.    Rev. Stats., final title.    Robinson v. Varnell, 16 Texas, 389; Engelking v. Von Wamel, 26 Texas, 471.

(4) The title of an act amending another act is a sufficient compliance with law when it refers to the title of the amended act without further designating the object of the amendatory act.    Const., art. 3, sec. 35; The State v. McCracken, 42 Texas, 383; Hesselmeyer v. The State, 1 Texas Ct. App., 690; Dogge v. The State, 22 N. W. Rep., 348; The State v. Berka, 30 N. W. Rep., 267; Gatling v. Lane, 22 N. W. Rep., 455.

(5) The title of an amendatory act which fails to point out what code of laws is to be amended, is still sufficient if it contains enough to certainly indicate the code, title, and section attempted to be amended. The State v. McCracken, 42 Texas, 383.

(6) Though an act is void as to objects not indicated in the title, it is to be liberally construed and upheld as to all objects which are reasonably necessary, subsidiary to, and connected with the main object contained in the title. Battle v. Howard, 13 Texas, 345; Tadlock v. Eccles, 20 Texas, 792; San Antonio v. Gould, 34 Texas, 51; Breen v. Railway, 44 Texas, 306; Giddings v. San Antonio, 47 Texas, 548; Railway v. Smith County, 54 Texas, 1; Davis v. The State, 61 Am. Dec., 340, and notes.

(7) A corporation is only in a national or artificial sense a person, resident, inhabitant, citizen, or alien; but in undertaking to act as such it assumes to the State where such acts are performed, in a qualified sense, the relation of citizen, alien, inhabitant, or person, and may be subjected as such to the operation of general laws and the jurisdiction of the courts. Rev. Stats., art. 3140, sec. 2; Bank v. De Vaux, 5 Cranch, 61; Railway v. Letson, 2 How., 514; Marshall v. Railway, 16 How., 324; Drawbridge Co. v. Shepherd, 20 How., 227; Steamship Co. v. Tugman, 106 U. S., 118; Foote's Priv. Int. Jur., pp. 76–87.

*Robertson & Coke,* for appellee.—1. The permit issued by the State of Texas to appellee, for a valuable consideration, authorizing and entitling it to carry on its business in the State for ten years from the date of said permit, evidenced a contract between appellee and the State, the obligation of which the State could not impair by subsequent legislation. Sayles' Civ. Stats., art. 574a; Const. U. S., art. 1, sec. 10; Black's Const. Prohib., secs. 61–64; Cool. Const. Lim., p. 710; Gas Co. v. Light Co., 115 U. S., 650; Fire Assn. v. New York, 119 U. S., 110; Humphrey v. Pegues, 16 Wall., 245; The State of Missouri v. Hawthorne, 9 Mo., 389; The State v. Phalen, 3 Harr. (Del.), 441; Adams v. Hackett, 77 N. H., 289; 46 Ala., 329; 1 Ohio St., 15; 119 Pa. St., 417.

2. The Act of the Legislature of Texas, approved April 13, 1891, is void, because the subject of said act is not expressed in its title, as required by the Constitution of the State. Acts 1891, p. 82; Const., art. 3, sec. 35; Suth. on Stat. Con., secs. 78, 101; Harland v. Territory, 13 Pac. Rep., 453.

STAYTON, CHIEF JUSTICE.—This is an agreed case, and so much as is necessary to be stated is as follows:

"Appellee brought this suit in the District Court of Ellis County, and its petition alleged the following facts: That plaintiff is a foreign corporation, incorporated under the laws of the Kingdom of Great Britain and Ireland, with its principal office in the city of London,

England, but doing business in the State of Texas, and having an office in Dallas County, in said State; that the business authorized by plaintiff's articles of incorporation, and the business done by plaintiff, is the loaning of money and taking as security for its payment mortgages and trust deeds upon real estate; that on August 13, 1889, plaintiff filed its said articles of incorporation with the Secretary of State of the State of Texas, and paid the said Secretary of State, as consideration for the right to carry on its said business in the State of Texas for the period of ten years from the date above named, the sum of $200; that the contract so made with the State is evidenced by the following certificate, to-wit:

" '*No. 66. The State of Texas, Department of State.*—This is to certify that the Texas Land and Mortgage Company, Limited, incorporated under the laws of England for the purpose of loaning money, taking mortgages and liens to secure the payment thereof, and any other business incidental or necessary thereto, with authorized capital stock of $2,500,000, has this day filed in this department a certified copy of its articles of incorporation, in accordance with the requirements of an act of the Twenty-first Legislature of the State of Texas, approved April 3, 1889; and I further certify that said corporation has this day paid $200, the amount of fee prescribed by said act; and I hereby declare that said corporation, having fully complied with the law, is entitled to and is hereby granted permission to carry on its business in this State, in accordance with the provisions of said act of April 3, 1889, for the period of ten years from the date hereof, in accordance with the purpose herein specified.

" 'Witness my official signature and the seal of State affixed, at the city of Austin, the 13th day of August, 1889.

[Signed]   .                                " 'J. M. MOORE,
                                              " 'Secretary of State.'

"That on July 30, 1891, the plaintiff loaned the defendant the sum of $550, in consideration of which the defendant then and there made his note of that date for said amount, payable to the order of plaintiff fifteen days after the date thereof, with 10 per cent per annum from date, and 10 per cent attorney fees in addition in case of suit upon said note, and delivered said note to plaintiff; and on the same date, for value, executed and delivered to plaintiff a trust deed, conveying to Henry C. Coke, a citizen of Texas, as trustee, the following property, to-wit, those certain lots or tracts of land described as follows, to-wit, lying and being situate in the city of Dallas, Dallas County, Texas, and known as lots Nos. 7 and 8, in block R of Simpson & Clark's addition to the city of Dallas, known also as block No. 584 of Murphy & Bolanz' official map of Dallas, to secure the prompt payment of aforesaid note. Said trust deed was in form a conveyance of aforesaid property to said trustee, with covenants of general warranty, and contained the usual

stipulations and power of sale upon default of payment of the debt secured, and the conditions and clauses of defeasance usual and common in such instruments; that when said debt became due the defendant failed and refused to pay the same, or any part thereof, but wholly made default, and that said debt remained wholly unpaid at the institution of said suit, and still is wholly unpaid.

"Plaintiff asks for judgment against said defendant for its said debt, interest, attorney fees, and costs, and for foreclosure of the lien of said trust deed on the above described premises.

"The defendant appeared, and, answering said petition, admitted the truth of the facts pleaded, but excepted specially to said petition as follows:

"1. To so much of said petition as set up aforesaid permit as a contract between the State and plaintiff; because said permit was not a contract, but a revocable license which conferred no right on plaintiff that the State could not take away by statute.

"2. To so much of said petition as sought a foreclosure of the lien of aforesaid trust deed on the premises above described; because said deed, having been made to secure the payment of money to a foreign corporation, on land in Texas, under the Act of the Legislature of Texas, approved April 13, 1891, created no lien and was void.

"The case was properly and regularly reached and called for trial, and was submitted to the court, whereupon the court overruled above exceptions and rendered judgment for plaintiff for $616, the amount due on said note of said date, with foreclosure of the lien of said trust deed on aforesaid premises, to which ruling of the court defendant duly excepted and in open court gave notice of appeal.

"No questions are involved in the appeal except the following:

"1. Is the permit above set out a contract between plaintiff and the State, the obligation of which the State can not impair by subsequent legislation?

"2. Does the Act of the Legislature of April 13, 1891, prohibiting alien ownership of lands in Texas, affect the validity of aforesaid trust deed, and is the said judgment of foreclosure entered in this case erroneous by reason of anything in said act contained? And should it be held by the Supreme Court that said Act of April 13, 1891, affected the validity of aforesaid trust deed and made it erroneous for the court to enter judgment foreclosing the lien of said deed, and the aforesaid permit from the State to plaintiff was not a contract the obligation of which was impaired by said Act of the Legislature, then it is agreed that the judgment in this case shall be reformed by the Supreme Court so as to stand simply as a judgment for money; otherwise it shall be affirmed."

If the Act of April 13, 1891, be invalid, it is unnecessary to consider whether the permit to appellee to do business in this State was revoca-

ble, as is it to determine whether, within the meaning of that act, a mortgage deed conveys title or interest in land.

It is claimed on one side and denied by the other that the act is void. The Constitution provides, that "no bill (except general appropriation bills, which may embrace the various subjects and accounts for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title." Const., art. 3, sec. 35.

The only exception to the rule thus declared is found in section 43 of article 3 of the Constitution, which declares, that "The first session of the Legislature under this Constitution shall provide for revising, digesting, and publishing the laws, civil and criminal; and a like revision, digest, and publication may be made every ten years thereafter; provided, that in the adoption of and giving effect to any such digest or revision, the Legislature shall not be limited by sections 35 and 36 of this article."

In pursuance of this article the Sixteenth Legislature, at its regular session, passed an act entitled "An act to adopt and establish the 'Revised Civil Statutes of the State of Texas,'" and the first section of that act was as follows:

"Section 1.   Be it enacted by the Legislature of the State of Texas, That the following titles, chapters, and articles shall hereafter constitute the Revised Statutes of the State of Texas."

This revision contains many "titles," most of which contain more than one "chapter" and many articles.

At the same session of the Legislature a like revision was made of the Penal Code and Code of Criminal Procedure.   The original Penal Code was enacted on August 28, 1856, under a title as follows:   "An act to adopt and establish a penal code for the State of Texas;" and the Code of Criminal Procedure by an act entitled, "An act to establish a code of criminal procedure for the State of Texas;" and it was declared that the one should be known as the "Penal Code" and the other as the "Code of Criminal Procedure."

Section 2 of Final Title of Revised Statutes provides, "That these Revised Civil Statutes of the State of Texas shall be known and may be cited as the 'Revised Statutes.'"

The title of the act to be considered in this case is as follows:   "An act to amend title 3, articles 9 and 10, and to add articles 10a, 10b, 10c, 10d, 10e, 10f, 10g, and 10h, and to repeal all laws in conflict therewith."   Laws of 1891, p. 82.

If this title be not in compliance with section 35 of article 3 of the Constitution, then the act following it is void.   It is contended that the title is a compliance with the requirements of the Constitution, notwithstanding from it the subject of legislation can not be known; and so upon the theory that by searching the Revised Statutes it will be seen that title 3 of the Revised Statutes is the only one of that number in

any of the laws of this State which has articles numbered 9 and 10; and further, because looking to title 3, articles 9 and 10 of the Revised Statutes, it will be seen that these relate to the same subject on which the act in question was intended to operate.

The mischiefs intended to be avoided by section 35 of article 3 of the Constitution have been so often stated that it is not now necessary to restate them, and it must be deemed settled that such a law is mandatory, and hence binding upon every department of the government.

While this is so, such provisions have been liberally construed, and it has been steadily held that a title which in substance is a compliance with the requirement of the Constitution is sufficient; but can it be claimed that the title in question is sufficient even under this liberal rule?

The Constitution declares that the "subject shall be expressed in the title," and it can not be said that this has been done where the title does no more than to furnish a reference to some other writing, document, or law from which by search the true purpose of a title may be ascertained. If such had been the intention of the people when they adopted the Constitution, or of the delegates who framed it, the peremptory language found in the section of the Constitution under consideration would not have been used. The body of a bill would furnish more ready means of information to members of the Legislature as to its subject than would a mere reference in a title to some other law which it was the purpose of a bill to amend; but no one would contend that a title as follows, "An act to amend an act in reference to the subject contained in the bill to which this is the title," would be a compliance with the Constitution.

In States having such a constitutional requirement as that found in the Constitution of this State, it has been held that the title to an amendatory law having application to a specific subject, and not to a body of laws enacted by one act, must embrace the title of the act to be amended in order to give the subject of the law, unless the title of the amendatory act does this in some other manner. No one would contend that a title as follows, "An act in reference to the subject embraced in the bill to which this is the title," would be sufficient, although such a title attached to a bill would give most easy reference to sources of information from which the subject of the contemplated law might be ascertained. This is so because the Constitution requires the subject of an act to be given in the title to it, and a mere reference to something else for the information thus required to be given is not sufficient.

Since the enactment of the Penal Code and Code of Criminal Procedure the Legislature has amended them by acts, the titles of which gave the number of the article to be amended and name of the code as

given by the act adopting it, and the same course has been pursued in reference to the Revised Statutes; and in view of the legislative construction thus placed upon the section of the Constitution under consideration, as well as some decisions by this and other courts based on like provisions, we would not feel authorized to hold that such a construction was so clearly wrong as to justify this court in holding statutes with such titles invalid, although it might seem to us that a different rule would be more in harmony with the requirements of the Constitution.

The views on which the Legislature and courts have proceeded doubtless are that the Penal Code, Code of Criminal Procedure, and Revised Civil Statutes each relate to but one subject; the first, to defining crime and prescribing punishment therefor, both germane to one subject—crime; the next, to provide rules of procedure through which crime may be established and proper punishment imposed, the subject being the mode in which this may be done. In reference to the same matter, the Legislatures of this and other States and some courts have doubtless regarded such a collection of statutory laws as are found in the Revised Statutes of this State, adopted as they are by one act, as relating to but one general subject, and for this reason in amending such a statute it has been thought sufficient for the amendatory statute in its title to name the section or article, and body of laws in which it is found, that it is the intention of the Legislature to amend. Whether such views are correct or not it might be well for the Legislature to consider, in view of the fact that section 43 of article 3 of the Constitution in terms applies only to revisions of the body of laws, civil and criminal, periodically, and not to amendments made thereto between the periods of revision.

Under the liberal rule above suggested it can not, however, with reason be contended that the title of the act under consideration is a substantial compliance with the requirements of the Constitution; for the title does not name the body of laws, by its title or otherwise, which it was the purpose of the Legislature to amend, nor does it otherwise designate the subject in reference to which it was intended to legislate.

If we look to title 3, articles 9 and 10 of the Revised Statutes, we may ascertain that these regulate or determine to some extent the rights of aliens, and if we look to the act in question we see that it was applicative, in part at least, to the same subject; but it is not in this manner that the Constitution requires notice or information of the subject of a proposed act to be given.

In The State v. McCracken, 42 Texas, 384, the validity of an act was called in question, the title to which was as follows: "An act to amend an act entitled, 'An act to adopt and establish a penal code for the

State of Texas,' approved August 26, A. D. 1871," and the title was held sufficient. The ground of objection to it was that it did not give the true date of the adoption of the Penal Code, and it was held that this did not invalidate the act, because only one penal code had ever been in force in this State, and that for this reason the title was not misleading.

It is claimed that in the case of The State v. Ransom, 73 Missouri, 78, the Supreme Court of Missouri held a title to an act in all material respects like that under consideration in this case sufficient; but we do not think this is true. The title to the act considered in that case was as follows: "An act to revise and amend chapters 176 to 186, inclusive, regulating the jurisdiction and procedure before justices of the peace in civil cases."

In that title certain chapters were referred to, as are articles in the title in question, without statement of the particular act of which they were parts; but had the title in that act gone no further than does the title before us, we apprehend that the Supreme Court of Missouri would have decided differently. The title of that act, besides naming the chapters to be amended, expressly gave the subject of the act to which the amendment was to relate, which was "the jurisdiction and procedure before justices of the peace in civil cases," and the court doubtless considered this a sufficient designation of the chapters to be amended, and deemed the part of the act then under consideration germane to the subject named.

There is nothing in the title of the act under consideration from which the subject may be known, and were we to hold it a compliance with the requirement of the Constitution we would deny to that law the effect which its letter and spirit show it was intended to have.

We think the court below correctly held the act in question inoperative for the reasons indicated, and its judgment will be affirmed.

*Affirmed.*

Delivered December 11, 1891.