## BITTER v. BEXAR COUNTY.
### (No. 1049–4309.)

Commission of Appeals of Texas, Section A.
Dec. 5, 1928.

164

Denman, Franklin & McGown, of San Antonio, for plaintiff in error.

Birkhead, Lang & Beckmann, F. Stevens, and D. A. McAskill, all of San Antonio, for defendant in error.

NICKELS, J. 1. Articles 3881 et seq., R. S. 1911, as amended in 1913 (articles 3881 et seq., Vernon's Sayles' Tex. Civ. Stat. 1914), in force throughout the period in question, make up what is called the "Maximum Fee Bill." According to its provisions separately considered: (a) Bitter, as tax collector of Bexar county, was entitled to a yearly compensation of $4,250; (b) the fiscal year ran from December 1 to November 30; (c) in respect to "fees of all kinds" "collected during any fiscal year," he was entitled to retain as his own the amount of compensation noted and to use some for office expenses; (d) the balance of the "fees of all kinds" collected in any fiscal year became "excess fees," which he was required to pay "to the county treasurer" (article 3889, R. S. 1911) "on December 1" (article 3896).

In chapter 147, Acts of the Thirty-Fourth Legislature, Reg. Sess. 1915, certain fees for compiling delinquent tax records were named, as were certain commissions on delinquent tax collections. The amount of these "fees" and "commissions" became added to the amount of compensation to which Bitter was entitled under the provisions of the "Maximum Fee Bill." Curtin v. Harris County, 111 Tex. 568, 242 S. W. 444. In chapter 64, Acts of the Thirty-Sixth Legislature (2d Called Sess. 1919), purportedly effective October 20, 1919, the latter right (i. e., enlargement of compensation) was taken away, and thereafter, during the period in question, Bitter's yearly compensation was restricted to the $4,250 named in the "Maximum Fee Bill," if the relevant portion of the 1919 act took effect; and whether it did so or not is an important question in the case.

The Attorney General ruled against a collector's right to add to the amount of his yearly compensation as prescribed in the "Maximum Fee Bill" the sum of the "fees" and "commissions" accruing under the terms of the 1915 act, and his error was not developed until announcement (June 12, 1922) of the decision in Curtin v. Harris County, supra. In the meantime and each year, Bitter did not add that sum to the $4,250 to which he was entitled under the "Maximum Fee Bill." The aggregate of those "fees" and "commissions" for the years in question, respectively, is: $1,592.15 ("commissions") for 1915-16; $4,488.57 ("commissions") for 1916-17; $3,727.41 ("commissions") for 1917-18; $4,525.78 ("commissions") for 1918-19 (to October 20); $6,482.77 ("fees" and "commissions") for 1919-20; $5,322.79 ("commissions") for 1920-21; $5,867.57 ("commissions") for 1921-22; $5,153.13 ("commissions") for 1922-23. In the $6,482.77 given for 1919-20 is included $1,314.50 "fees" for services in compiling records, etc., resulting in substantial compliance with the requirements of the 1915 and 1919 acts per finding of the trial court; an additional amount of such "fees" ($2,508.35) is claimed by Bitter for the fiscal year of 1922-23, but the trial court found facts (e. g., lack of statement of amount of taxes due in respect to each tract of land, lack of list of tracts assessed to un-

known owners, lack of preparation in triplicate, etc.), and those findings deprive Bitter of the right to claim that amount even if the 1915 act were still in effect. Curtin v. Harris County, supra.

In Article 7691, R. S. 1911, effective throughout the period in question, certain fees (which we will call "delinquent tax-suit fees") were provided for the collector, and that without specific reference to his right to keep the amount thereof in all events. In respect to those fees we take the situation to be this: (a) Prior to enactment of the "Maximum Fee Bill" in 1913, they belonged absolutely to the collector; (b) through enactment of the "Maximum Fee Bill," warrant to consider those fees as measuring a constituent of compensation was removed for they were not at any time thereafter ."specifically excepted" from operation of the "Maximum Fee Bill." Curtin v. Harris County, supra. That is to say, for each of the years now under' consideration those fees had to be included in the amount of "fees of all kinds" "collected during the fiscal year," and, thus, taken into account (without a corresponding deduction as for compensation) in finding the amount of "excess fees" as payable to the "county treasurer" "on December 1 of each year."

Bitter (and various other officers, including the county attorney) had the impression that the amount of "delinquent tax-suit fees" collected were to be added to the amount of compensation otherwise provided (i.'e., in the "Maximum Fee Bill"), and as a result Bitter added that amount, each year, to the $4,250 to which he was otherwise entitled, and thus affected the amount of "excess fees" found to be payable to the "county treasurer." The amount of those fees for each year is: $2,840 for 1914-15; $2,971.73 for 1915-16; $4,377.71 for 1916-17; $4,212.85 for 1917-18; $5,069.20 for 1918-19; $4,731.69 for 1919-20; $4,387.45 for 1920-21; $4,211.50 for 1921-22; $5,349 for 1922-23.

In respect to all fees, commissions, etc., other than those of the two classes mentioned (i. e., fees and commissions accruing under the 1915 act and "delinquent tax-suit fees"), proper accounting was made each year in determining the amount of "excess fees."

The trial court held the claims asserted by the county in respect to each year prior to 1917-18 barred by operation of the statute of four-years' limitation, allowed Bitter (by way of "recoupment") credit of $8,215.91·for the years of 1917-18 and 1918-19 account of "commissions" accruing under the 1915 act, and rendered judgment in favor of the county for $19,710.50 (with interest) as for the non-barred "delinquent tax-suit fees," less the "recoupment."

The Court of Civil Appeals sustained the trial court's rulings in the matter of limitation and in the matter of the effectiveness of the 1919 act. In respect to Bitter's "recoupment," etc., it held he was not entitled to the amount allowed by the trial court or to any other amount. The judgment was so reformed as to allow the county additional recovery ($8,215.91) equal to the amount allowed by the trial court in Bitter's "recoupment," etc., and, as reformed, it was affirmed. 266 S. W. 224.

■ 2. The statutes·so operate as to make a gross fund of "fees of all kinds" "collected during the fiscal year" ending "December 1." Articles 3881–3886, 3889, 3896. Dispositions thereof ought to be in respect to three purposes: Payment of the officer's compensation; payment of certain office expenses; and payment of the residue to the "county treasurer" (article 3889) "on December 1" (article 3896). If in any case it happen that dispositions for the first and second purposes mentioned exactly equal or exceed the gross amount of "fees of all kinds," the third purpose of course is moot for lack of·any residue ("excess fees"). Administration. and final disbursement of the fund in any year, as is manifest, require ascertainment of three factors, viz:, the gross amount of "fees of all kinds" (a finding of fact), the amount of office expense (a finding of fact and law), and the amount of compensation for the officer (a. matter of law); application of those factors determine, first, whether "excess fees" in any amount exist, and, secondly, the amount (if any) thereof. The substantive law of the county's demands against Bitter is, in general, that above described. Its pleading, as we understand it, rests thereon; certainly it includes that much; and if in words the pleaded claims go beyond the statutory right, to that extent they occupy non justiciable ground and must be ignored.

■ 3. The manner in which the gross and the net ("residue," "excess fees") fund yearly arises and the contingent nature of a county's interest, as described in "2" above, attribute to the contentions rested in technicalities sometimes incident to "offset," "counter-' claim," "recoupment," and "payment" (considered as forms of action or independent defenses), an immaterial character, so far at least as accounting for any particular year, separately viewed, is concerned.

This is true in respect to "payment" for the reason that Bitter did not owe the "delinquent tax-suit fees" (mistakenly omitted), separately considered, as a debt, and the county did not owe the "commissions" (mistakenly included) as a debt, since the amount of the residue of the funds, annually accrued, measured the obligations of Bitter and the rights of the county. Those obligations and rights were neither cut down by nomenclature and bookkeeping nor increased or otherwise affected by mistaken appellation indulged'by either or both parties in respect to particular factors considerable in identification of the "residue." Hence mutual act of the parties (each in the double character of

debtor and creditor) was not essential to mutual cancellation of items within the rule sometimes announced; e. g., 21 R. C. L. 45; Blount v. Windley, 95 U. S. 173, 24 L. Ed. 424.

For like reason, it was not essential for Bitter, in respect to the amounts and elements of the sums mistakenly included as delinquent tax collection "commissions" in ascertainment of the yearly "residue," to put himself in the position of one entitled to "maintain an independent suit" as is sometimes necessary in "offset," "counterclaim," or "recoupment" strictly applied as indicated in some authorities—e. g., Bates v. Republic, 2 Tex. 616; Borden v. Houston, 2 Tex. 594; Coleman v. Bunce, 37 Tex. 171; Evans v. Bell, 45 Tex. 553; Lakeside Sanitarium v. Dickens (Tex. Civ. App.) 259 S. W. 1110; and North American Commercial Co. v. United States, 171 U. S. 110, 18 S. Ct. 817, 43 L. Ed. 98.

Aside from the effect of sovereignty recognized in Bates v. Republic and Borden v. Houston, supra (and of the distinct "rights" of Bates and Borden as mere defendants and as "actors," Allbright v. Aldrich, 2 Tex. 166; Hamilton v. Van Hook, 26 Tex. 306), and in Chevallier's Adm'r v. State, 10 Tex. 315, examination of the opinions will readily disclose lack of anything contra to what has been said. Bates was clerk of a district court of the republic in which "the sum of six hundred and thirty dollars and twenty-two cents * * * had been adjudged to the republic in the cases of the prize schooners Progressa and Dos Amigos," the amount of which had been paid to Bates, Clerk, and was in his possession. The clerk was cited to show cause "why he refused to pay over" that money; his defense was that "the republic was indebted to the defendant for the amount of an audited draft and also in the sum of $700.76 for fees due him as clerk of said court," in consequence of which he "had the right to retain the money in his hands in payment of costs due him." Borden was collector of customs for the republic, with duty "to pay over to the government, whose agent he was for this express purpose, his specific collections"; he had, as such agent, received certain funds which he declined to pay over; suit was brought for those funds; he defended on the ground that in his personal right he owned "certain promissory notes and bonds, etc., of the republic, for which he ought be allowed set-off." Chevallier had executed to the republic "a written instrument" in which he "acknowledged * * * that he owed to the government * * * the sum of $700.37 for duties on merchandise previously imported by him"; the state succeeded to the obligation and brought suit upon it, and "by way of set-off several claims against the government" were pleaded. The claims of the defendants (denied in those proceedings) arose, obviously, in transactions distinct from and independent of those out of which the obligations sought to be enforced by the plaintiffs arose; and, as plainly, the republic in two of the cases and the state in the third were at all times entitled to have the whole of the specific funds involved, and not merely a residue or balance thereof.

Like reason, too, precludes ground for the objection that Bitter must have submitted his "claims" to the county authorities for auditing, allowance, etc. He did not sue the county within the meaning of article 1366, R. S. 1911 (article 1573, R. S. 1925); the county sued him for recovery of the "residue"; and in computing that "residue" it was necessary, as shown, to take all amounts to which he was lawfully entitled (in respect to the fund in gross) into consideration.

What has been said in respect to Bitter's claims has reference alone to the nature and effect of those claims as applicable to balances for particular years, each year taken separately.

But the matter has another aspect, e. g., for the year of 1921-22, and on December 1, 1922, there was a balance in his favor amounting to $1,656.07. And a question arises whether he is entitled to have such balance applied (pro tanto) in extinguishment of prior and subsequent balances in favor of the county.

If sureties (especially different sets of sureties) were involved with possibility of hurt, or if the money represented by excessive payments was not, in truth, the money of the officer (distinguishable from public money), it is probable that such allowance in Bitter's favor could not be made. State v. Middleton's Sureties, 57 Tex. 185, 188, 190, and cases therein cited; Rogers v. State, 99 Ind. 218. But that situation is not present. Interest in the sums represented by "delinquent tax-suit fees," on the one hand, and delinquent tax collection "commissions," on the other, is here confined to the county and Bitter.

There is a general rule touching "application of particular payments when the debtor owes distinct debts" (recognized in State v. Middleton's Sureties, supra), to this effect:

"The debtor has the option if he thinks fit to exercise it, and may direct the application of any particular payment at the time of making it; if he neglects to make the application, the creditor may make it; if he also neglects to apply the payment, the law will make the application."

See Matossy v. Frosh, 9 Tex. 610, 613; United States v. January, 7 Cranch, 572, 3 L. Ed. 443; Rogers v. State, supra; Fowler v. Poor, Dallam Dig. 401; Simpson v. Huston, 14 Tex. 476, 481.

Each claim in respect to each balance is a liquidated one, and in respect to those which are not barred by limitations (cf. Holliman v. Rogers, 6 Tex. 91, 98), we can perceive no just reason precluding mutual acquittal, pro

tanto. Articles 2014, 2015, 2017, 2215, R. S. 1925; Duncan v. Magette, 25 Tex. 245, 250, 257, and cases cited above.

■ 4. Upon consideration of Heigel v. Wichita County, 84 Tex. 392, 19 S. W. 562, 31 Am. St. Rep. 63, and Bexar County v. Linden, 110 Tex. 339, 220 S. W. 761, on the one hand, and Coleman v. Thurmond, 56 Tex. 514, 521, H. & T. C. Ry. Co. v. Travis County, 62 Tex. 16, 18, and Delta County v. Blackburn, 100 Tex. 51, 58, 93 S. W. 419, on the other, we reached conclusion that the bar of limitations is not operative against a county's claim for "excess fees." The Court of Civil Appeals treated the opinion in Harris County v. Charlton, 112 Tex. 19, 29, 243 S. W. 460, 245 S. W. 644, as removing all doubt that the bar is available. In consultation with the members of the Supreme Court we were informed that they regard Harris County v. Charlton as establishing applicability of the bar in such a case as that now before us (wherein "public free school funds," etc., under administration by a county as trustee are not involved). Hence we treat the plea of limitations interposed to the county's claims here as being available. And since the county's suit, inter alia, is predicated upon Bitter's official bond, we regard the bar of the four-years' statute as being the one to be considered.

The suit was commenced February 22, 1922. The bar is perfected in respect to the claims for "excess fees" payable to the "county treasurer" on December 1, 1917, and at previous dates.

The county's plea of the bar of two years' limitation is not available in respect to the balance of $1,656.07, above mentioned, for that balance arose (December 1, 1922) within two years of the filing of Bitter's pleading. There were earlier balances in his favor, but consideration of them in relation to the plea is immaterial because of the effect given the $1,656.07 balance (see "3" above and "6" below), and because he was not given affirmative relief thereon by the trial court and does not in the Supreme Court seek such relief.

■ 5. As noted ("1" above), section 3 of the 1915 act ("chapter 147") had the effect of adding the sum of fees and commissions collected thereunder to the "maximum" compensation otherwise provided (i. e., in the "Maximum Fee Bill"). Curtin v. Harris County, supra. That act, in all events, was effective to October 20, 1919. Section 2 of the act of 1919 ("chapter 64"), purportedly effective October 20, 1919, evidence an attempt so to amend "section 3" of the 1915 act as to take away from a collector the increase in compensation mentioned. It is claimed the 1919 act (to that extent) never became effective (within the period in question), because in its passage there was nonobservance of that provision of section 35 of article 3 of the Constitution wherein it is required that the "subject" of every bill "shall be expressed in its title."

The caption of "chapter 64" is in these words:

"An Act to amend Section 1 of Chapter 147 of the Acts of the Regular Session of the Thirty-fourth Legislature relating to the duties of Tax Collectors to prepare and mail notices and statements of delinquent taxes against lands to the record owners thereof; the preparation and perfecting of the delinquent tax records of various counties and the compensation of the collector therefor; relating the duties of the County and District Attorneys in respect to instituting suits for the collection of delinquent taxes and the compensation they shall receive therefor, so as to require and provide that the notices to the record owners of real estate against which taxes are delinquent may be mailed by the tax collector to the addresses of such owners during the months of April and May each year, or as soon thereafter as practicable; and prescribing the contents of such notices; and to amend Section 3 of said Chapter so as to provide that the County Attorney of each county in the State, or the District Attorney in counties having no county attorney, shall file suit for the collection of taxes delinquent against any lands or lots situated in such county together with interest, penalties, and costs then due, as soon as practicable after the expiration of 90 days from the date of the notice mailed to the delinquent owner thereof by the tax collector under provisions of this Act; amending said Chapter 147 by adding thereto Section 3a—providing the manner, time and method of collecting taxes, penalties, interests and costs due against and in respect to lands and lots appearing on lists furnished by the tax collector to the County or District Attorney as lands and lots located in the county which appear on the delinquent tax records in the name of 'unknown' or 'unknown owners' or in the name of persons whose correct address or place of residence in or out of the county said collector has been unable by due diligence to discover or ascertain, and declaring an emergency."

The caption, it is noticeable, separately declares a general purpose to amend "section 1" and a general purpose to amend "section 3" of "chapter 147," as, also, a purpose to amend "said chapter 147 by adding thereto section 3a." "Section 3a," as enacted, contains no reference to the matter of this controversy, and, for that reason, may be put aside.

In addition to the general declarations of purpose mentioned, it was undertaken in the caption in respect to "section 1" to state the matter to which the section (as enacted in 1915) "relates," it being said that the "section" has reference to "duties of the tax collectors" in preparation and mailing of notices, compiling records, and "compensation of the collector therefor" and to certain duties "of the county and district attorneys" (in respect to tax suits) and their compensation. "Section 1" of "chapter 147" (the act of 1915) contains no reference to "compensa-

tion of the collector" for compiling records or for any other service.

In the caption of the 1919 act it is said that "section 3 of said chapter" 147 is to be amended "so as to provide" that the "county attorney" or "district attorney" shall do named things.

The general declarations of purpose to amend "section 1" and "section 2" were not thought to be sufficient; to the declaration about "section 1" was added a description of the subject-matter, thereof which, in so far as relevant here, was wholly untrue. In respect to "section 3" of "chapter 147," in name, it was declared that the "section" was to be amended "so as to provide" duties in no way belonging to the collectors but belonging entirely to the "county attorney" or "district attorney." It is our view that since the caption "is not content to state a purpose to amend certain statutes, but proceeds to specify the nature of the proposed amendment," and in doing so not only "gives no notice of an intention" to do what was actually attempted in section 2 of the body of the act, but, contrarily, states "an altogether distinct and foreign purpose," it does not meet the requirements of section 35, article 3, of the Constitution; in consequence the 1915 act remained in effect. Arnold v. Leonard, 114 Tex. 535, 542, 543, 273 S. W. 799; Ward Cattle & Pasture Co. v. Carpenter, 109 Tex. 105, 200 S. W. 521.

 It is, of course, a general rule that liberal construction will be indulged so as to aid conformance of a title to constitutional requirements; e. g., if in the caption a purpose be but generally stated, that gives sufficient notice that all related and incidental matters may have attention in the body of the act; statement of the ultimate object will include warning of presence of details appropriate to achievement of the purpose. Johnson v. Martin, 75 Tex. 33, 12 S. W. 321; Doeppenschmidt v. I. & G. N. Ry. Co., 100 Tex. 534, 101 S. W. 1080; M., K. & T. Ry. Co. v. State, 102 Tex. 153, 113 S. W. 916. Likewise, the two-subject inhibition (section 35, art. 3) is observed if the two things have mutual relevancy or individual relevancy to accomplishment of a general purpose. Breen v. T. & P. Ry. Co., 44 Tex. 306; Giddings v. San Antonio, 47 Tex. 556, 26 Am. Rep. 321; State v. Parker, 61 Tex. 265. But the vice in this title is that one general purpose is not declared, but, contrarily, specific purposes are stated and the manner of their declaration is misleading. In the first instance, there is affirmative misstatement (so far as the reference to a collector's compensation is concerned) in that the subject is not included in "section 1" of the act; that reference, too, is specifically restrained to compensation for compiling delinquent tax records, and on familiar rules mention of that particular "fee" excludes reference to others (e. g., tax collection "commissions"). In the second instance, there is "distinct assurance that the subject" of section 2 (amendatory of "section 3" of "chapter 147") was a "limited one and that its scope was to amend" the section "in that way and no other." Adams v. San Angelo Waterworks Co., 86 Tex. 485, 25 S. W. 605; Ward Cattle & Pasture Co. v. Carpenter, supra; Arnold v. Leonard, supra; Holman v. Cowden & Sutherland (Tex. Civ. App.) 158 S. W. 571, writ denied; Rodgers v. Tobias (Tex. Civ. App.) 225 S. W. 804, writ denied.

The observations made of the 1919 act have no relevancy, of course, to transactions occurring subsequent to passage of the Revised Statutes of 1925, and apparently affected by such provisions of the 1919 act as are reproduced in the code.

6. *Results.*—For the period commencing December 1, 1918 (date of accrual of the earliest item not barred by limitations) and ending December 1, 1923 (last date involved), yearly balances in favor of the county were $485.44 for the year of 1917-18; $543.42 for the year of 1918-19; and $195.87 for the year of 1922-23—a total of $1,224.73. Balances in favor of Bitter (within that period) were $1,751.08 for 1919-20; $935.34 for 1920-21; and $1,656.07 for 1921-22. For reasons stated, we have laid to one side (as immaterial) all balances in favor of Bitter except that of $1,656.07, which arose December 1, 1922. Since the latter exceeds in amount the aggregate of the county's balances, plus interest, within the nonbarred period, recovery in any amount by the county lacks warrant.

7. We recommend that the judgments of the district court and Court of Civil Appeals be reversed, and that judgment that Bexar county, Tex., take nothing as against John A. Bitter be rendered.

CURETON, C. J. Judgment of the district court and Court of Civil Appeals reversed, and judgment rendered that the defendant in error take nothing by its suit, as recommended by the Commissions of Appeals.