BOARD OF INSURANCE COM'RS v.
SPROLES MOTOR FREIGHT
LINES, Inc., et al.

No. 13462.

Court of Civil Appeals of Texas. Fort
Worth.

April 17, 1936.

Rehearing Denied May 22, 1936.

William McCraw, Atty. Gen., and W. W.
Heath, Asst. Atty. Gen., for appellant.

Rawlings & Sayers, of Fort Worth, for
appellees.

SPEER, Justice.

Sproles Motor Freight Lines, Incorporated, which, for convenience, we shall hereafter refer to as plaintiff, instituted this suit on November 7, 1935, against the Traders & General Insurance Company, which we shall hereafter refer to as defendant company, and against R. L. Davis, Ray-

mond S. Mauk, and R. G. Waters, to whom we shall hereafter refer as board of commissioners.

Plaintiff alleged that it was a public carrier of freight over its motor lines, and that it had procured from the Railroad Commission a permit to do business as such, and that such permit, together with the business built up in the past, constituted a very valuable property right, and that this suit was instituted for the protection of that property right, and, ancillary thereto, asked for a restraining order against the defendant company and the defendant board of commissioners to prevent them from enforcing certain rules, regulations, and provisions alleged to be detrimental to the property rights of plaintiff.

There are several grounds urged by plaintiff why its rights were being jeopardized, and as many reasons why the defendants should be enjoined; pending the hearing of the cause on its merits. We shall refer briefly to those considered by us pertinent to a disposition of the case. They are:

That plaintiff had been engaged in the motor carrier business for a long time prior to 1927, and that, in the purchase of insurance guaranteeing its prompt payment of judgments obtained against it, it had been free to purchase such insurance from any company desiring to sell such policies, but that the Acts of the 40th Legislature (1927), c. 253, p. 373, now article 4682b of the Civil Statutes (Vernon's Ann.Civ.St.), purported to give to the commission of insurance of the state of Texas authority to set rates for premiums and make such rules, regulations, and provisions as the members of the commission thought expedient in the matters of insurance required by the act.

Plaintiff attacks the validity of the act upon the ground that it is in conflict with, and prohibited by, section 35, article 3, of the Constitution of this state, which inhibits a bill containing more than one subject, which shall be expressed in its title; that the said act was void and unenforceable for the reason it was in violation of the anti-trust laws of this state, particularly subdivision 2 and 5 of article 7426, Rev. Civ.Statutes of 1925, and creates a monopoly of certain companies and a discrimination against others.

Alternatively, that, if the act be held valid, then by its terms the only authority the board of commissioners had under the law was, within 90 days after the law became effective in 1927, to fix the rates, provisions, and classifications for insurance required by the act to be furnished by plaintiff and interveners; and that, when once fixed by the commissioners, as was done in 1927, the board of commissioners could not change or modify such rates, rules, conditions, and regulations, and that any subsequent attempt by the board of commissioners to do so was void.

That the board of commissioners did, in 1927, fix the rates for premiums of insurance and make certain classifications, rules, and regulations pertaining to the operation of motortruck lines as common carriers, and that plaintiff did in due season comply with all of said rules, regulations, and provisions, purchasing all insurance of the class and kind required, and in every way fully complied with said order.

That by an order effective on the 12th day of August, 1935, the board of commissioners, without authority of law, arbitrarily modified and changed the rates of the premiums to be charged for insurance to be carried by the plaintiff, by the printing and approval of manuals to that effect, and entered an order that such documents contained all the rates, rules, and regulations governing the writing of such insurance, and that the defendant company which carried plaintiff's insurance had notified plaintiff that it could not rewrite or renew plaintiff's insurance at the expiration of the then existing policies except under the conditions contained in said revised rates, rules, and manuals; and that the rates for premiums set by the board of commissioners on August 12, 1935, were materially higher than those set by it in 1927, and that an enforcement of such order would be confiscatory of plaintiff's property rights, and that the defendant company had acquiesced in the wrongful acts of the board of commissioners in refusing to renew plaintiff's policy of insurance except at the higher rates of premiums and under the provisions of the new order by the board of commissioners.

There is a general allegation that the Act of the 40th Legislature (1927), c. 253, p. 373, now article 4682b, Vernon's Ann.Civ. St., is void and that it be so declared by the court, and that its enforcement be restrained until a hearing thereon can be had.

On the same day the petition was filed, the judge of the Ninety-Sixth district court of Tarrant county, Tex., entered his tempo-

rary restraining order, recited to be operative pending the hearing of said cause upon its merits, requiring plaintiff to execute a bond in the sum of $1,000. On the same day the bond was executed and filed, the writ of injunction, temporarily restraining the defendant from enforcing, or further attempting to enforce, the rules, rates, forms, and regulations of the board of commissioners, was seasonably served on the respective defendants.

On November 20, 1935, the board of commissioners filed their application with the court to modify the terms of its restraining order, to the extent that it should be effective as to plaintiff and all other persons, firms, or corporations engaged in a similar business to that of plaintiff who should become a party to this suit by intervention or otherwise before the application should be acted upon.

On the same day this application to modify was filed, eighty-three concerns, purporting to be motor freight truck lines doing business in Texas, filed a common plea of intervention, adopting the pleadings of the plaintiff as their own, and on the same day the court entered its order permitting the intervention and modifying its temporary restraining order theretofore entered on the 7th day of November, 1935, as prayed for in the motion filed. For the purpose of determining the questions involved, we deem it unnecessary to name the long list of interveners.

On the 12th day of December, 1935, defendant commissioners filed a plea to the jurisdiction of the court to hear the issues raised by the plaintiff's petition, alleging that the defendant company was a corporation having its main office and domicile in Dallas, Dallas county, Tex., and that the suit was for injunctive relief only, and that the respective domiciles of the defendant commissioners, as individuals and as commissioners, were in the city of Austin, Travis county, Tex., and that under the terms of articles 4643 and 4656, Rev.Civ.Statutes of 1925, the Ninety-Sixth district court of Tarrant county had no jurisdiction to hear said cause, but that only the district court of Dallas county or Travis county had jurisdiction to try the same. This plea to the jurisdiction was by the court overruled.

On the date of the filing of the plea to the jurisdiction, to wit, December 5, 1935, the board of commissioners filed their motion to dissolve the restraining order, which motion contained the clause: "Without

waiving or invalidating any other pleadings herein filed and particularly the plea to the jurisdiction to hear and determine this cause."

On December 12, 1935, the defendant company filed an answer to plaintiff's petition, alleging a lack of jurisdiction in the Ninety-Sixth district court of Tarrant county, on substantially the same grounds set forth by the board of commissioners; a plea of misjoinder of parties defendant; and a general plea to the merits of plaintiff's petition.

On December 5, 1935, the court entered an order passing the hearing on plaintiff's petition until December 12, 1935, specially providing that the previously issued restraining order should remain in full force and effect. On December 12, 1935, the court entered an order that the application of plaintiff and interveners for a temporary injunction came on for hearing, and, with announcements of all parties, testimony was heard at intervals until December 20th, when the court found the law was for plaintiff and interveners and that a temporary injunction should issue. He thereupon ordered that a writ issue restraining and enjoining the defendants and each of them, pending the trial of the suit on its merits, from enforcing, or further attempting to enforce, the rules, rates, forms, and regulations set forth in the manuals and orders of the board of insurance commissioners of Texas, approved August 10, 1935, and to be effective after August 12, 1935, and ordered bond in the sum of $1,000. To which judgment the defendants excepted and gave sufficient notice of appeal. Only the board of insurance commissioners has perfected an appeal.

There are no findings of fact and conclusions of law filed by the court, and we cannot know whether he found with plaintiff upon all its allegations, and, if not, then upon which ground alleged the restraining order was issued. The court order is that defendants and each of them be restrained and enjoined pending the trial of this suit on its merits, yet we are confronted with the statement of facts of testimony adduced, consisting of 300 pages, together with a dozen or more printed booklets containing tables, rates, and other data, indicating a very thorough trial was had of the issues involved, and no doubt all available testimony was before the court, and from this record we must determine if the injunction should stand.

There are 25 assignments of error contained in the board of commissioners' brief, upon which it presents 27 propositions as grounds for reversal of the action of the trial court. The view we take of the disposition that should be made of this case will only require that we discuss such of the assignments as are pertinent to the conclusions reached by us.

We have chosen first to discuss the attack made by plaintiff and interveners upon the validity of article 4682b, Vernon's Ann.Civ.St., because they assert it is violative of the provisions of section 35, article 3, of the State Constitution. We do this for the obvious reason that the validity of the statute under consideration should first be determined by us.

Whether the act is assailed because its title contains more than one subject or because its title does not contain the subject-matter relative thereto, we do not know, but each is considered as if both objections were properly raised.

Prior to our state Constitution of 1876, the section under consideration contained the word "object," where it now contains the word "subject," and the change was made, no doubt, because the word "subject" was less restrictive than the word "object," Stone v. Brown, 54 Tex. 330, 341, and tended to liberalize the rule that had previously been adhered to by the courts. The early case of Stone v. Brown, supra, substantially held that the purpose of the constitutional provision was to advise the lawmaking body as well as all persons interested of the nature of each particular bill, so as to prevent the insertion of foreign clauses, of which the casual reader had no notice, and for the additional reason that without such notice in the title legislators in their haste to reach another measure would inadvertently be inclined to pass them without the required deliberation. Legislators were especially entitled to know by the title the subject under consideration. The Commission of Appeals to the Supreme Court, in the case of Consolidated Underwriters v. Kirby Lumber Co., 267 S.W. 703, 705, in passing upon a similar objection, said:

"But it would be useless and impracticable for the title to express all of the provisions of a particular act and the details of each provision. For, in such a case, this introductory matter would amount to a mere repetition of the legislation itself, and would answer no purpose of abbreviated notice. On the other hand, to embody the various provisions in separate bills would, because of narrow bounds, interfere with the completeness and usefulness of each of them. Breen v. Texas & P. Ry. Co., 44 Tex. [302] 305.

"As a result, doubtless, of these and other practical difficulties, while constitutional provisions regarding the expression of the subject-matter in the title of bills have always been held mandatory, still they. have been interpreted liberally and substantially, and not strictly or literally. Murphey v. Menard, 11 Tex. 673; Austin v. Gulf, C. & S. F. R. Co., 45 Tex. [234] 267; Breen v. Texas & P. R. Co., 44 Tex. [302] 305; State v. Parker, 61 Tex. [265] 267; Gunter v. Texas, etc., Co., 82 Tex. 496, 17 S.W. 840. For like reasons, though there are statements in Adams v. Water Co., 86 Tex. [485] 487, 25 S.W. 605, to the contrary, it has been definitely decided that titles to bills are not subject to the maxim that the expression of one thing is the exclusion of another. Doeppenschmidt v. International & G. N. R. R. Co., 100 Tex. 532, 101 S.W. 1080.

"Requirements as to the scope of titles have been applied in such manner as to obviate, as best may be, the evils and difficulties that have been mentioned. They have quite uniformly been taken to mean that, if the general and ultimate subject of a particular act as a whole is to be found within the wording of the title, the subject thus expressed, because giving reasonable notice of them, will serve to support provisions in the body of the act (among others not necessary to mention) that are components of the general subject; are reasonably implied by it because they have been connected with and appropriate to it in similar laws or by usage; are relevant and germane to to it; are necessary for the attainment of it; are reasonably auxiliary to it; are complementary to it; or are reasonable incidents of it, or of its incidents as expressed in the title"—citing Snyder v. Compton, 87 Tex. [374] 377, 28 S.W. 1061, and many more decisions by courts of our state and other states. .

The title to chapter 253, Acts of the 40th Legislature (1927), p. 373, now article 4682b, Vernon's Ann.Civ.St., attacked by the plaintiff in this cause, reads: "An Act to authorize the Commissioner of Insurance of the State of Texas to fix the rate of automobile insurance, providing a penalty for violation of the provisions thereof; and declaring an emergency."

We have not had our attention called to any provision in the act which cannot safely be said to be relevant or germane to, or is a reasonable incident of, the subject-matter as contained in the title, the principal complaint being (a) that the subject as contained in the title does not authorize classification of risks and other special provisions to be contained in policies of insurance, and (b) that there is no provision in the title authorizing the board of commissioners to change rates, classification of risks, and other provisions necessary for the enforcement of the act, after having once fixed the rate, classification, and conditions within 90 days after the act became effective in 1927.

■ We believe the subject of the proposed legislation is sufficiently stated in the title to the act. It is a common rule of construction by our courts that it is unnecessary for the validity of an act that the title should express in detail each and every means of performance and enforcement of the restrictions contained in the bill. And, since the title to this act provides that the bill shall authorize the insurance commissioner "to fix the rate of automobile insurance," we hold that the provisions in the act which authorize him to do this very thing, and the further provision as to his means of arriving at a fixed and adequate rate, such as stated hearings with the insured, as well as the insurer, are but means properly authorizing him to arrive at an end.

■ We have reached this conclusion without resorting to the well-defined rule that the constitutional provision must be given a liberal interpretation. Consolidated Underwriters v. Kirby Lumber Co. (Tex. Com.App.) 267 S.W. 703; Bitter v. Bexar County (Tex.Com.App.) 11 S.W.(2d) 163; Board of School Trustees of Young County v. Bullock Common School District No. 2 (Tex.Com.App.) 55 S.W.(2d) 538.

■ If the trial court considered the act void and enjoined its enforcement upon the theory that it was passed in violation of section 35, article 3, of our State Constitution, the second assignment of error presented by defendant board of insurance commissioners brings properly before us the issue, and we hold the assignment is well taken.

We now come to consider whether or not the act is such as is in conflict with our anti-trust statutes and is such as creates a monopoly in favor of some and is discriminative against others.

Article 7426, Rev.Civ.Statutes of 1925, provides:

"A 'trust' is a combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons, or either two or more of them for either, any or all of the following purposes: * * *

"2. To fix, maintain, increase or reduce * * * the cost of insurance. * * *

"5. To make, enter into, maintain, execute or carry out any contract, obligation or agreement by which the parties thereto bind, or have bound themselves * * * to make any contract of insurance at a price below a common standard or figure or by which they shall agree in any manner to keep the price of such * * * insurance * * * at a fixed or graded figure, or by which they shall in any manner affect or maintain the price of * * * insurance * * * between them or themselves and others, to preclude a free and unrestricted competition among themselves or others."

In the first place, there is a lack of combination and presence of two or more persons in this case to form a trust. True, there is an allegation by plaintiff that the defendant board of commissioners has fixed the rate of premium payments for the required insurance, and that the defendant company is acquiescing therein, yet we find the defendant company resisting the order of the board of insurance commissioners, and that the extent to which the defendant company is acquiescing therein is controlled by its desire to adhere to the rates, rules, and regulations promulgated by the board of commissioners. Clearly, there is a lack of mutuality in purpose between the defendants, and they cannot be said to be acting together.

In the second place, the board of insurance commissioners of Texas is a branch or arm of the government created by law for given purposes, and the validity of the law creating it is not attacked, nor is its expediency questioned, and we are, for these reasons, forced to recognize its existence and its legal functions.

■ In this age we think in terms of transportation, for without it our marketable property would be of little or no value. But we must not lose sight of the safety of our property and the security of our person, and the element of guaranty of both is an essential factor when we, by law,

license persons and corporations as common carriers of freight, such as are plaintiff and interveners. In addition to the worth and merit of those enjoying such a franchise from the state, they are required to keep on file with the proper authorities insurance policies to guarantee prompt payment of all judgments that may be obtained against them, and by article 4682b the board of insurance commissioners is authorized to fix the rate of premiums and classification of risks for the equitable protection of both the insured and the insurer. For the reasons stated, we cannot sustain the contention that the act is in violation of our anti-trust laws.

■ Then the next question arises in this connection: May a private business, such as an insurance company or a common carrier, be so affected by a public interest as to warrant legislative regulation of its rates, although no public trust is imposed upon the property, and although the public may not have the legal right to demand and receive the service? The answer is found in the case of German Alliance Insurance Co. v. Lewis, 233 U.S. 389, 34 S. Ct. 612, 58 L.Ed. 1011, L.R.A.1915C, 1189, where the query is answered in the affirmative. We therefore hold that the state of Texas may, through its board of insurance commissioners, regulate and control the rates of premiums charged and paid for contracts of insurance as a prerequisite to pursuing the business of a common carrier by means of motortrucks.

Counsel for plaintiff and interveners have, throughout this case, upon the trial, in their briefs, as well as by oral argument before this court, seriously contended that the board of insurance commissioners could only do the identical thing authorized by article 4682b, which, as they contend, only empowers them as a board to, within 90 days after the act became effective, fix a rate for insurance premiums and declare a standard of forms, classification of risks, and regulations, and, having done this, the board was thereafter powerless to withdraw or change the rates, classifications, and regulations once made, and that subsequent changes, especially the one effective on August 12, 1935, was void, and its enforcement should have been enjoined.

We find no fault with counsel's proposition that the board of insurance commissioners takes its authority from the act, but cannot agree with the further contention that the act does not authorize changes, or withdrawal of former rules, rates, and regulations.

For the purpose of illustrating what we mean, we quote here sections 1 and 3 of article 4682b, Rev.Civ.Statutes (Vernon's Ann.Civ.St.), as added by the 40th Legislature (1927) c. 253, p. 373:

"Sec. 1. Every insurance company, corporation, interinsurance exchange, mutual, reciprocal, association, Lloyds or other insurer writing automobile insurance in this State, hereinafter called the insurer, shall file with the Commissioner of Insurance, hereinafter called the Commissioner, within 90 days after this Act takes effect, its classification of risks and premium rates, none of which shall take effect until the Commissioner shall have approved the same as just, reasonable and adequate for the risks to which they respectively apply, and not confiscatory as to the class of insurance carriers authorized by law to write such insurance in this State. *The Commissioner may withdraw his approval of any rate, made or used by any insurer, if in his judgment such rate is unjust, unreasonable or inadequate to provide for the obligations assumed by the insurer.*" (Italics ours.)

"Sec. 3. To insure the adequacy and reasonableness of rates the Commissioner may take into consideration experience gathered from a territory sufficiently broad to include the varying conditions of the risks involved and the hazards and liabilities assumed, and over a period sufficiently long to insure that the rates determined therefrom shall be just, reasonable and adequate, *and to that end the Commissioner may consult any rate making organization or association that may now or hereafter exist.*" (Italics ours.)

The title of the act provides, as we have seen, that the commissioner may fix the rate of automobile insurance, and the bill itself is more definite as to the means to be employed by him, in that insurance companies desiring to write the required policies must, within 90 days after the act becomes effective, file with the commissioner their classification of risks and premium rates, none of which shall take effect until approved by the commissioner as being just, reasonable, and adequate. But we find by the act the commissioner may withdraw his approval of any such rate if he should find it unjust, unreasonable, or inadequate.

■ The concluding part of section 3 of the act also indicates to our mind the

Legislature intended to extend, and did extend, to the commissioner power to withdraw his approval of rates and make changes therein; to guarantee the justness of rates for premiums at all times, he was authorized to consult any rate-making organization then existing or that might thereafter exist. In construing the legislative intent, we may look to the wording of the bill as well also the conditions and circumstances of common knowledge then prevailing. If the Legislature had intended that the insurance commission should meet one time in obedience to the act, hear reports from insurance companies as to rates and classes of risks, and such remonstrances as were urged by those required to purchase the insurance, it doubtless would not have set up the machinery for the permanent control and regulation of rates to be charged for insurance on motortruck lines.

It was obvious to the Legislature when it passed this bill, as it is yet, that conditions concerning transportation were and are constantly changing and a rate, classification, and regulation, fair and equitable at one time, would not be adequate at another. Under the construction placed on the act by plaintiff, if an honest mistake were once made, the commission could not correct it; if it had developed after 1927 that a rate had been fixed greater than was adequate to the insurer and burdensome to the insured, the commission would have been without power to change it and give relief. We cannot agree with plaintiff's views in this respect.

■ We believe there is ample authority given in the act to the commissioners to withdraw approvals of rates and classifications and to thereafter make such rates and classifications as it shall deem adequate, just, and right.

■ In our construction of this statute, we have endeavored to ascertain the legislative intent, based upon well-settled rules of statutory construction. One of the earliest rules for our guidance was announced by the Supreme Court in the case of Russell v. Farquhar, 55 Tex. 355, in the brief statement, "it is the duty of the court 'to try out the right intendment' of the law," which rule has been many times quoted and followed and even broadened by adding to the above-quoted clause, "and, when found, to observe and follow it though there may be a conflict between its intent and words." McInery v. Galveston,

58 Tex. 334; Edwards v. Morton, 92 Tex. 152, 46 S.W. 792.

A finding of facts and conclusions of law by the trial court would have been beneficial to us in arriving at the point or points in the case considered by him sufficient to warrant the injunction. A request for these findings was made, but, when the court failed to comply, the appellant did not follow up the request with the reminder provided by article 2247, Rev.Civ.Statutes of 1925, as amended by Acts 1931, c. 76, § 1 (Vernon's Ann.Civ. St. art. 2247), and our disposition of the case is not influenced by the court's failure to file. We only mention this to illustrate the difficulty we have had in determining whether the trial court, after hearing the great mass of testimony sent up to this court, concluded the act of the Legislature, now article 4682b, was void, or that the acts of the board of insurance commissioners, fixing rates and classifications, effective August 12, 1935, were void.

We have not discussed in detail the assignments of error by the board of commissioners, but have considered them in groups as they pertain to the conclusions reached by us, and have sustained those agreeable with our views as expressed herein, and have overruled those not in harmony with our conclusions.

For the reasons set out, we believe, and so hold, that plaintiff and interveners have not shown sufficient grounds in their pleadings and proof to justify the issuance of a writ of injunction restraining the defendant board of insurance commissioners from attempting to enforce its order of August 12, 1935, and its observance by the defendant Traders & General Insurance Company. We therefore reverse the judgment of the district court and dissolve the restraining order issued by that court, and this order will be certified to the trial court for observance.

## On Motions for Rehearing.

Both the appellant and appellees have filed motions for rehearing in this case; the latter seriously insisting, as they did in the original hearing, that article 4682b, Vernon's Ann.Civ.St., is void and should not be enforced, that the act was passed by the Legislature in violation of the antitrust statutes of this state, and that its enforcement would be confiscatory of their property, and should be enjoined until the

case could be tried on its merits. They cite us to many cases wherein the courts have used similar language in connection with issues then before them, as that insisted upon in the case at bar. We have carefully studied the several decisions cited along with many more, but are not inclined to change our view as expressed in the original opinion.

Appellant complains in its motion for rehearing that we did not specifically state in our original opinion whether or not we had overruled their assignments of error raising the issue of jurisdiction in the trial court.

From the wording of our opinion, and more specifically that part wherein it referred to these assignments, the criticism would seem justified, but, after reaching the conclusions shown by the opinion, we did say: "We have not discussed in detail the assignments of error by the Board of Commissioners, but have considered them in groups as they pertain to the conclusions reached by us and have sustained those agreeable with our views as expressed herein and have overruled those not in harmony with our conclusions." We meant by the quoted statement that, since we were considering the appeal as if the trial court did have jurisdiction, the assignments raising the issue were overruled.

Appellees have renewed their contention that the trial court was without jurisdiction to try this cause, for the reason the only relief sought by them was injunctive, and that, under article 4656, Rev.Civ. Statutes, the writ should have been returnable to the county of the residence of one of the defendants and not to the court issuing the writ.

In the first place, the writ was made returnable to the Ninety-Sixth district court of Tarrant county, and, if appellant's contention is correct that it should have been made returnable to the district court of the county in which one of the defendants had a domicile, the writ was void and the court would have had no power to transfer the case, Thallman v. Buckholts State Bank (Tex.Civ.App.) 181 S.W. 791, but should have dismissed the action. We cannot agree with appellant that this is a suit for injunction alone, and therefore controlled by the jurisdictional statute,

article 4656. We have again read carefully appellees' petition upon which the case was tried, and find they claimed to own valuable property worth more than $60,000, and that a law had been passed by the Legislature, known as article 4682b, by the terms of which the board of insurance commissioners was claiming the right to fix and regulate the rate of insurance premiums and classifications of such risks, that the act was void for the reason it was enacted in violation of the Constitution, article 3, § 35, and was in violation of the anti-trust statutes of Texas, and that the enforcement of its provisions would be confiscatory of their property, and that they had no adequate remedy at law, asking for a temporary injunction restraining defendants from enforcing, or attempting to enforce, the same, pending this suit; concluding with a prayer that upon final trial article 4682b in all things be declared void and that defendants be permanently enjoined from enforcing its provisions.

The judgment rendered by the court and appealed from, after a recitation of findings, says: "It is therefore ordered, adjudged and decreed by the court that the defendants and each of them, their agents, servants, employees, and representatives be restrained and enjoined, pending the trial of this case on its merits, from enforcing or further attempting to enforce the rules, rates," etc.

We concluded, and so found, that the suit was instituted to try out the validity of a statute which was alleged to be void and confiscatory of plaintiffs' property. They sought a temporary injunction restraining its enforcement until the case could be tried on its merits, and that the injunction was ancillary to the main suit, therefore not controlled by article 4656, Rev.Civ.Statutes, and, in the absence of a plea of privilege, the trial court acquired jurisdiction of the subject matter and the parties. Lindley v. Easley et al. (Tex. Civ.App.) 59 S.W.(2d) 927.

We adhere to the disposition made of the case in our former opinion, and, with the explanations made herein of our ruling on the assignments of error raising the question of jurisdiction, we overrule both motions for rehearing.