**HARRIS et al. v. PRINCE.**
No. 13457.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 13, 1936.

Rehearing Denied Dec. 11, 1936.

J. R. Creighton and Ritchie & Ritchie, all of Mineral Wells, for appellants.

Hamilton, Lipscomb & Wood and Logan Ford, all of Dallas, for appellee.

SPEER, Justice.

An association, known as Lloyds of Texas, was organized, prior to the matters involved in this suit, for the purpose of doing a general insurance business, excepting

all forms of life insurance. The plan of the organization was for a group of underwriters to associate themselves together, each investing a stipulated sum and naming a common attorney in fact empowering him to handle the business of insurance risks evidenced by policies, and to keep a separate account for the respective subscribers to the exchange with the ultimate aim to make a profit for the subscribers.

The plan provided that each subscriber to the exchange should pay, at the time of becoming a member, 15 per cent. of the amount subscribed in cash and 25 per cent. in securities, along with a nonnegotiable note for the remainder of the subscription, all of which constitute the surplus of the association. The note was subject to call for payment by the attorney in fact at such time as he considered it necessary for the protection of policyholders and the solvency of the association.

On February 14, 1929, Mrs. Ada L. Harris, a married woman, executed the necessary articles of association, the power of attorney, subscribed for membership in the sum of $1,000, paid the 15 per cent. in cash, indorsed, assigned, and delivered to the attorney in fact securities consisting of shares in Mineral Wells Building & Loan Association of the par value of $1,000. (The securities thus transferred and delivered were not indorsed by the husband of Mrs. Harris.) Mrs. Harris also executed and delivered her nonnegotiable note for $600 representing the remainder of her subscription of $1,000, and by these acts became a member of the association and an underwriter of insurance by Lloyds of Texas to that extent.

The adventure proved unsuccessful, became insolvent and, upon suit instituted by the Attorney General of the State, was forced into liquidation and a receiver appointed to wind up its affairs. The court upon hearing the application on May 16, 1930, appointed W. D. Prince receiver for the association, the subscribers, and policyholders. See Lloyds of Texas et al. v. Bobbitt, Attorney General (Tex.Civ.App.) 40 S.W.(2d) 897.

The articles of association subscribed and signed by Mrs. Harris at the time she became a member provided: "Any subscriber hereto may at any time revoke his power-of-attorney and discontinue all future transactions of the business contemplated, and such revocation shall become binding upon the attorney-in-fact ninety days after receipt of notice in writing to that effect by said attorney-in-fact."

The receiver of Lloyds of Texas instituted this suit against Mrs. Ada L. Harris and her husband, Jodie P. Harris, on August 12, 1935, to divest them and each of them of all right and title to the securities theretofore assigned by Mrs. Harris to the attorney in fact and to quiet the title thereto in him as receiver.

The receiver alleged, among other things, that although Mrs. Harris had the option under the contract of subscription to notify her attorney in fact of her intentions to withdraw from said association, she had failed to do so but had chosen to treat her subscription agreement and transfer of said stock as a valid, legal, and subsisting contract, and that she was now estopped to assert claim to the securities and to deny the validity of the transfer thereof.

The defendants answered by general denial and special pleas to the effect that at the time Mrs. Harris entered into the association agreement and transferred the securities she was a married woman, and averred facts which would negative her right to transfer the securities, shown to be her separate property. That the husband of Mrs. Harris did not join the indorsement nor assignment of the securities in any form, and that the indorsement and transfer by Mrs. Harris was void and conferred no right or title therein to the attorney in fact nor to the association. That the title thereto remained in her and that the receiver was wrongfully retaining possession thereof, and asked that she be awarded the title of same and that the receiver be required to deliver the possession of said shares of stock to Mrs. Harris, the rightful owner.

The case was tried to the court, who after having heard the pleadings and the evidence rendered judgment for the receiver and against the defendants, for superior title to the securities as a part of the assets of Lloyds of Texas, and ordered the receiver to sell the securities and place the proceeds in the general funds of the association to be disbursed in the liquidation.

The defendants have perfected an appeal from that judgment to the Dallas Court of Civil Appeals, and the cause has been transferred to this court under an order of our Supreme Court.

The appeal is based upon eight propositions relating to the assignments of error filed.

The substance of these propositions may be understood from the following statements:

1. Mrs. Harris was a married woman when the transfer of her securities was attempted to be made; absent the joinder by her husband in the transfer, no title passed to Lloyds of Texas, when transferred by her alone.

2. It is proposed that no rule of estoppel could be applied to Mrs. Harris occasioned by her subsequent acts, because she was a married woman when the transaction took place, and therefore the whole attempted contract was void, and could not be made effective by subsequent acts other than a valid conveyance, which was not done.

3. That Rev.Civ.St. art. 881a—22 (Vernon's Ann.Civ.St.), providing for married women to become subscribers to such associations with power to hold, pledge, and transfer their shares of stock as a feme sole without the joinder of their husbands (the act taking effect July 22, 1929), was void, being in conflict with the restrictions of the State Constitution, article 3, § 35, and further because the act if valid was subsequent to the matters in controversy.

4. That at most Lloyds of Texas only acquired a lien on the shares of stock in Mineral Wells Building & Loan Association placed by Mrs. Harris with the attorney in fact in an effort to comply with the terms of the exchange, and in any event the court could do no more than declare such lien to secure the payment of 25 per cent. of the subscribed shares, the percentage being only $250; and the court erred in awarding to the receiver title to the securities.

For convenience we shall refer to the receiver as plaintiff, to Mr. and Mrs. Harris as defendants, and to Lloyds of Texas as the exchange.

On February 14, 1929, when Mrs. Harris transferred her securities to the exchange, Rev.Civ.St. art. 4614, was in effect and controlled the manner in which the wife's separate stocks and bonds could be transferred. That article provided that the joint signature of the husband was necessary for the transfer of the wife's separate stocks and bonds. The contention here is made by defendants that because of that statute, the attempted transfer of the securities by Mrs. Harris without the joinder of her husband was void. While the plaintiff asserts that in view of the rule that there are five contingencies under which a married woman could transfer her separate stocks and bonds, creditors and subscribers in whose place the plaintiff stands, without knowledge of facts to the contrary, may properly and consistently assert that such transfer by the wife alone is voidable only.

The courts of this state have frequently used the terms "void" and "voidable" interchangeably as applied to the particular facts of the case under consideration. An act may be void as between certain parties, determinable by the information one may have or with what he, in law, is charged with having known; while to another differently situated the same act may be only voidable. In the view we take of the undisputed facts in this case concerning subsequent acts and conduct of the defendants, and what we shall say concerning the validity of Rev.Civ.St.. art. 881a—22 (Vernon's Ann.Civ.St.), attacked by defendants as being in violation of the Constitution of this State, we find it unnecessary to discuss at length whether under the facts of the case before us the original assignment of the securities by Mrs. Harris was void or only voidable as against the plaintiff and those represented by him.

Under article 4614 of our statutes above referred to, it was necessary, for a valid conveyance of the stocks and bonds of a married woman, that her husband join in such transfer. Effective July 22, 1929, the rule was changed by Rev.Civ.St. art. 881a—22 (Vernon's Ann.Civ.St.), which provides: "Married women may become subscribers to the capital stock of any association, and hold, pledge, hypothecate, control, transfer and withdraw the same in all respects as feme sole, without the consent or joinder of their husbands."

It will be observed this act was subsequent to the transactions involved in the subscription by Mrs. Harris to the exchange, and transfer by her (alone) of her securities.

The above-mentioned article is claimed by defendants to be in violation of article 3, § 35, of our Constitution, which forbids the passage of any bill that shall contain more than one subject as expressed in the caption. The caption of the bill reads: "An Act defining building and loan associations, providing for their incorporation and prescribing the terms, conditions and regulations upon which such companies may carry on their business in Texas; providing that shareholders shall not be disqualified to take acknowledgments; validating

such previous acknowledgments by shareholders; prescribing the terms and conditions upon which foreign building and loan associations may carry on their business in Texas; prescribing penalties for violation of the provisions of the Act; repealing acts and parts of acts in conflict herewith; and declaring an emergency." Acts 1929, 2d Called Sess., c. 61.

■ It is contended that the caption is not sufficient to authorize the bill to provide that married women may become subscribers and hold and dispose of their stocks without the consent and joinder in the transfer thereof by their husbands, and to repeal a former statute requiring such joinder by the husband. It has been so repeatedly held by our courts that the constitutional provision should be observed, it is needless to cite the cases here or to repeat the wholesome reasons assigned. It has as many times been held with as good reasoning that such restrictions should be interpreted liberally and substantially and not strictly or literally. Murphey v. Menard, 11 Tex. 673; Austin v. Gulf, C., & S. F. Ry. Co., 45 Tex. 234, 267; Breen v. Texas & P. Ry. Co., 44 Tex. 302, 305; State v. Parker, 61 Tex. 265, 267; Gunter v. Texas, etc., Co., 82 Tex. 496, 17 S.W. 840; and by this court in Board of Insurance Com'rs v. Sproles Motor Freight Lines (Tex.Civ. App.) 94 S.W.(2d) 769 (writ of error refused).

■ It is also the well-settled rule of law in this state that a bill will not be stricken under the provisions of the Constitution if its title can be reasonably construed to cover the general and ultimate subject of an act, taken as a whole. In this connection it was said in case of Consolidated Underwriters v. Kirby Lumber Co. (Tex. Com.App.) 267 S.W. 703, 705: "Because giving reasonable notice of them [the subjects covered], will serve to support provisions in the body of the act * * * that are components of the general subject; are reasonably implied by it because they have been connected with and appropriate to it in similar laws or by usage; are relevant and germane to it; are necessary for the attainment of it; are reasonably auxiliary to it; are complementary to it; or are reasonable incidents of it, or of its incidents as expressed in the title." Many authorities are there cited as supporting the statement of the law.

■ The caption or title to a bill is to enable those who are interested in the passage of laws to know by its reading the general subject to be covered, to the end they may interpose any objections or amendments thereto before its passage. It has often been held that the details of the matters to be legislated upon cannot, in the nature of things, be set out in the title. The caption to the proposed bill here under consideration clearly discloses there was proposed legislation on the very important subject of building and loan associations; by which it was proposed to prescribe the terms, conditions, and regulations upon which they could carry on the business. The subject contained in the bill to the effect that married women could participate in such operations as a means of carrying on the business could deceive no one; there has never been a law forbidding such; the title provided that it was a bill prescribing the terms, conditions and regulations upon which such a company could operate. Why should one expect in these modern times that, in the absence of a law to the contrary, a married woman should not be permitted to participate in the operation of a business enterprise? If complaint is made because a statute was changed, obviating the necessity of the joinder by the husband in the transfer of the wife's stocks and bonds, then there is in the title notice to the public that all laws in conflict with the one proposed are to be repealed; this was sufficient for every one to know that some existing law was to be superseded, and was sufficient when taken in connection with the whole title to indicate the purpose of the bill. We cannot agree with defendants' contention that the act is in violation of the Constitution under the article and section cited.

■ The effect of article 881a—22 was to remove the impediment theretofore existing to a married woman transferring her stocks and bonds without the joinder of her husband, from and after the time the law became effective. There is no provision of law in this state which limits the transfer of stocks and bonds to conveyances in writing, nor to any other particular form. It follows then that it was not necessary after July 22, 1929, that the husband join the wife in such transfers, and their acts and conduct with reference to the transfer previously made, may be looked to in determining whether or not they are estopped from repudiating the former assignment by the wife. We think the title to personalty, such as these securities, could pass from one person to another by mere delivery un-

less the wording of the bond required a written assignment. We also hold that both the defendants by their acts after July 22, 1929, furnished sufficient grounds to support the court's conclusion that they were estopped to deny the validity of the transfer of the stock in Mineral Wells Building & Loan Association.

Mrs. Harris testified she had advised her·husband of the transaction; that he knew from the beginning she was becoming a subscriber to the exchange as an underwriter of insurance to the extent of $1,000; she knew she was being held out to the public as such; she entered into the contract expecting to gain a profit from the transaction; she expected the exchange to write insurance and charge premiums for it; while she did not recall having read the instruments, but she presumed the man who solicited her membership read and explained it all to her; she made no effort to terminate her relations to the exchange by giving notice of such intentions; she never wrote the exchange at any time expressing dissatisfaction in the matter until she was advised it was in the hands of a receiver; she said she was ill a portion of the time and gave the matter little or no thought; that she never questioned in her own mind the validity of the transfer of the stocks; that she at all times considered she had transferred them to Lloyds of Texas and that it was entitled to keep them; that if she had been called upon prior to the receivership to do so, she would not have hesitated to execute any form of assignment of the stocks; she said she permitted the exchange to continue writing insurance from the date of her subscription until the date of the receivership; that she expected the exchange to continue writing insurance with a view to making a profit for the subscribers.

The articles of agreement executed by Mrs. Harris provided that the proceeds of her subscription, paid in, should go into the surplus of the exchange. This surplus under the law was held out by the exchange as an evidence of its ability to respond under the terms of policies written, and purchasers of insurance were entitled to rely upon these representations. Under the circumstances, the defendants will not now be heard to say that since the adventure was a failure they should be permitted to receive back their contribution. They could not speculate on the successes of the exchange, and upon its failure, withdraw and escape liability. Tex.Jur. vol. 10, § 131; Thompson v. First State Bank, 109 Tex. 419, 211 S.W. 977; Davis v. Burns (Tex. Civ.App.) 173 S.W. 476 (writ of error refused); Alexander v. Wilson, 124 Tex. 392, 77 S.W.(2d) 873.

We do not hold that a conveyance or transfer of property by a married woman in which the law requires that the husband join can of itself estop her from asserting its invalidity, but we do hold she may by her acts, subsequent to a time when it is no longer required that the husband join in the transfer, and while she is sui juris, preclude herself from asserting the vice in the original transfer. See Tex.Jur. vol. 23, p. 311, § 271.

■ "Estoppel" in its broadest sense is the penalty paid by one who is guilty of some wrong perpetrated by a known fraud, or by some affirmative act without the intent to perpetrate a fraud, but which may result in a legal fraud on another.

Texas Jurisprudence, vol. 17, p. 138, § 10, quotes from the case of Westbrook v. Guderian, 3 Tex.Civ.App. 406, 22 S.W. 59, 60, this terse statement: "Its [estoppel] mission is to protect the innocent and blameless. For this purpose it compares the conduct of men; and, whenever loss must result to one of two persons because of the culpable conduct of one of them, it interposes, and compels the wrongdoer to sustain the loss * * * in order to protect innocence."

■ Estoppel is applicable to married women under the rule laid down in Tex. Jur. vol. 23, p. 310, § 271, where it is said: "The recognition of the separate juristic capacity of a married woman necessarily subjects her to the rules of estoppel, but such application of the doctrines of equity will not contravene the law." See, also, Guaranty Bond State Bank v. Kelley (Tex. Com.App.) 13 S.W.(2d) 69; Barnes v. Archer (Tex.Civ.App.) 77 S.W.(2d) 883; Hill v. McIntyre Drilling Co. (Tex.Civ. App.) 59 S.W.(2d) 193; Speer's Marital Rights, § 240.

We have not discussed defendants' propositions in the order presented by them for the obvious reason that if article 881a—22 was effective, and Mrs. Harris could be bound by the principles of estoppel, and her acts had been sufficient to warrant the application of the rule, it becomes unimportant, in a disposition of the case, whether her original attempted assignment of the

shares of stock was void or only voidable. We therefore overrule assignments 1, 2, 3, 4, 5, and 8 raising these questions.

By propositions Nos. 6 and 7, which we have considered under the subdivision designated by us as No. 4, above, it is contended by defendants that conceding the original transaction was void, the exchange acquired no more than a lien on the shares of stock and the court erred in decreeing the title to the receiver instead of ordering a foreclosure of a lien for payment of $250.

■ Whether or not the title passed to the exchange by the terms of articles of association executed by Mrs. Harris must be determined, if we can, by the intention of the parties as evidenced by the instrument itself. In this respect it reads: "Sixth. Each subscriber, upon the signing of these Articles of Association and upon the execution of the power-of-attorney herein provided for, and as a condition precedent to becoming a subscriber to said association, shall contribute in cash, bonds, stocks or other securities, to be approved by the Attorney-in-fact, to the surplus of said association, a sum not less than 15% in cash and 25% in securities of the amount of his total subscription to surplus which subscription to surplus shall be evidenced by a nonnegotiable subscription note signed by the subscriber and delivered to the Attorney-in-Fact * * *."

The record before us discloses that the 15 per cent. in cash was paid, the stocks assigned and a note for $600 executed, and all delivered to the attorney in fact in compliance with the above provision of the articles of association. These were all passed to the surplus account of the exchange. There is nothing in the record which tends to show that anything other than what was provided by the terms of the articles of association was intended between the parties. There is no allegation of fraud or mutual mistake whereby proof could be properly introduced to change the plain and unambiguous terms of the instrument of writing.

The only thing we have found in the testimony which reflects anything contrary to the agreement is found in Mrs. Harris' testimony where the questions and her answers were as follows:

"Q. When you transferred this Building & Loan Stock in the Mineral Wells Building & Loan Association to Lloyds of Texas that was done in compliance with and in order to comply with the subscription agreement, was it not, this is the fund that was your contribution to the guaranty fund and surplus? A. For $250.00.

"Q. This share of stock is your contribution to the fund, you were to pay $250.00? A. Yes, sir.

"Q. You understood and intended for the exchange to handle this as your contribution to the guaranty fund, in other words this is the security you transferred to them, it was to be part of the surplus to pay losses? A. For only $250.00 if I remember correctly.

"Q. This was your payment on your subscription? A. It is to be just as collateral if I remember correctly, for that amount."

■ There is ample evidence to support the findings of the trial court that the shares of stock were assigned to the exchange, and in view of such finding we are not authorized to review it even though Mrs. Harris does contend to the contrary, as shown in the excerpt of her testimony above quoted.

The stocks were transferred to the surplus fund of the exchange and thus held out to prospective purchasers of insurance; Mrs. Harris said she knew this was done; it also appears that the assets of the exchange including the shares of stock will lack 80 per cent. paying the liabilities of exchange.

■ The rights of creditors of the exchange are involved in the controversy between the receiver and these defendants, and such creditors have a right to expect at the receiver's hands that he salvage all legal assets of the exchange and disburse them pro rata between creditors according to their several classifications. See Thompson v. First State Bank (Tex.Civ.App.) 189 S.W. 116; McWhirter v. First State Bank (Tex.Civ.App.) 182 S.W. 682 (writ of error refused); Shaw v. Borchers (Tex. Com.App.) 46 S.W.(2d) 967; Reeves v. Powell (Tex.Civ.App.) 267 S.W. 328 (writ dismissed).

We find no error in the judgment of the court decreeing title to the stocks in the plaintiff, and the assignments complaining of such act are overruled.

The judgment of the trial court is affirmed.