**Don HAMPTON, Appellant,**

v.

**Robert S. McCAIG et al., Appellees.**

No. 17726.

Court of Civil Appeals of Texas, Fort Worth.

May 28, 1976.

Stockard & Stockard, and Gerald E. Stockard, Denton, for appellant.

Sullivant, Meurer, Harris & Sullivant, and Belvin R. Harris, Gainesville, for appellees.

## OPINION

MASSEY, Chief Justice.

Plaintiffs, Robert S. McCaig, et al., obtained judgment against defendant Don Hampton and he appealed. Dispute was upon boundary.

Reversed, with cause remanded.

Plaintiffs' suit is in form of trespass to try title for 55 acres of land allegedly owned by plaintiffs out of the Woodfin Survey, being part of 140 acre tract originally conveyed by one Winter to Spradling by deed recorded in Vol. 134, page 241, Cooke County Deed Records, described by metes and bounds (somewhat abbreviated) as follows: "BEGINNING at the Southeast corner of the 83½ acre tract conveyed by W. J. Wilson . . . to James T. Butt . . . the Northeast corner of the 55 acre tract conveyed by G. W. Spradling to B. F. Carter . . .; THENCE West *with fence* 275 varas, corner on south bank of branch being the inner corner of said J. T. Butt tract; THENCE South 119 varas to Southeast corner of said J. T. Butt tract; THENCE N 88 W *with fence* 560 varas to SW corner of said J. T. Butt tract on West line of said 140 acre tract; THENCE S 2 W with west line . . .; THENCE East . . .; THENCE North . . .;

THENCE East . . . ; THENCE South . . . ; THENCE East . . . ; THENCE North with said road 470 varas to the beginning." (Emphasis is supplied.) The description alleged is of an enclosure as to which distances and directions other than along the north boundary is unimportant in our consideration of the case.

Further allegation was that defendant owns an adjacent tract, to the north therefrom, and that in 1973 he destroyed plaintiffs' north boundary line fence and proceeded to build a new fence to the south of the location of what had theretofore marked plaintiffs' north boundary line and upon plaintiffs' land to the south therefrom so as to enclose with his own land approximately five (5) acres of land belonging to plaintiffs. To be noted is that there was no specific allegation of ouster of plaintiffs' possession of the five acres.

It is obvious by the evidence, particularly that of the defendant, that the nature of the suit is to establish a disputed boundary line location though brought in form of trespass to try title; and that defendant concedes that he does not claim any of plaintiffs' land. It is fortunate that the trial court obviously treated it as such. Had the court rendered a take-nothing judgment for defendant upon his plea of not guilty an appeal by plaintiffs would pose a troublesome problem. Plaintiffs failed to prove their title either by chain of title from the sovereign or by limitation. The appeal being by the defendant, we are free to remand the cause for a new trial in the interest of justice and because plaintiffs' case was not fully developed. T.R. C.P. 434, "If Judgment Reversed."

It is apparent that plaintiffs treated the trial of the case below as one which could be conducted economically and without seeking the services of a surveyor, and one in which they could proceed by proving the defendant's south boundary line by defendant's deed in the belief that to do so would establish their own northern boundary. Plaintiffs' evidence did not establish their own northern boundary line by that proof. They attempted—without completion of proof—to establish a limitation title. It is not clear whether plaintiffs' land has ever been surveyed "agreeably to law." Plaintiffs' proof failed.

The evidence showed that plaintiffs' predecessors in title (or some of them) claimed ownership of land to a fence marking their northern boundary. By introduction of their own pleading plaintiffs intended thereby to show that the fence ran from the place of the BEGINNING therein alleged (which might be fixed by reference to the proper location on the ground by finding the Southeast corner of a certain 83½ acre tract which was subject to a deed of record between third-parties and not by any ancient or other landmark) to the West *with fence,* thence South, thence West *with fence,* etc. Plaintiffs claimed title to all the land south of the aforesaid line as qualified by the term "with fence." Obviously the fence referred to was that of some fence which was in existence and referred to by some deed which would be in plaintiffs' chain of title. It is not known when such reference was first made in any deed.

There was testimony that a fence had been in existence along the north part of the land as to which plaintiffs presently claim title for a period in excess of fifty years. It is without dispute that such fence was not one which ran in a straight line. Rather was it a fence in timbered land. It had originally been erected, and thereafter maintained, by fastening wire to convenient trees. In other words it had been a "zig-zag" fence; perhaps one intended to run along an approximate straight line, but was one which actually radically deviated therefrom in a meander.

Defendant had "bulldozed" and felled the trees to which the wire was fastened, or at least a good portion of them, so that the old "fence line" cannot be determined with 100% accuracy. So far as was shown a surveyor could not, by aid of any field notes, determine the old "fence line"; he could only establish by an approximation where it had been before defendant destroyed it by making field notes according to antecedent placement of markers as des-

ignated by someone able to show where the fence had formerly been located. Obviously there would be necessity to show limitation title along with such proof if other title capable of proof should fail to show that the entire fence was on plaintiffs' own land, saving, perhaps, at the northeast and northwest corners.

In other words plaintiffs' necessity in establishing a *prima facie* case, if he would show his entitlement to prevail by the pleadings upon which he has declared, is to establish the ground location of the fence destroyed by the defendant and couple this with proof of a clear title to all land lying south of the fence either by chain of title or by limitation title. In the trial from which there has been an appeal plaintiffs failed to discharge their burden of proof.

The trial court, upon evidence, did find that the new fence had been constructed by the defendant at a location which was to the south of the old "fence line" (at least in part) and that Mason Kirby was capable of walking the old fence line so as to determine its former location. The judgment of the court read in part as follows: "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant, Don Hampton, be and is hereby ordered to remove the fence . . . and rebuild the boundary line fence between Plaintiffs' and Defendant's lands at its original location which shall be located, marked and staked by Mason Kirby who is hereby appointed by the Court to perform such duty and he shall be paid a reasonable fee for such services which are taxed as costs herein; . . . ." Additionally there was a judgment award of $1,000.00 in favor of plaintiffs and against defendant for destruction of trees upon plaintiffs' property. The decree did not adjudicate title, which from the evidence was matter in dispute, at least as applied to some acreage.

■ To be observed from what we have said is that there was not sufficient evidence of title or of boundary location to support plaintiffs' judgment, nor was there sufficient evidence that it was plaintiffs' land upon which trees were destroyed. The judgment was insufficient to so identify the land that an officer charged with the duty of executing a writ of possession could go on the ground, and without exercising judicial functions ascertain the locality of the boundary line. Of course the trial court could not have prepared a judgment which satisfied this legal requisite of judgments by the evidence presented, but aside from such failure in evidence the ineffectiveness of the judgment requires that it be set aside on appeal. 9 Tex.Jur.2d, p. 638, "Boundaries," Sec. 85, "(Verdict and Judgment)—In general."

■ There was failure of the judgment to fix the amount to be taxed as costs for Mason Kirby's future services. Thereby was denial to defendant of opportunity to complain relative to value of his services and amount to be taxed to pay for them at some time after the purported final judgment. Additionally, the part of the judgment which directed Mason Kirby to go on the premises and locate, mark and stake a location for defendant to replace a fence constituted an impermissible delegation of judicial powers in executing a judicial function. Noted is that Kirby is not a surveyor and that title could not be determined by his actions in designating the location for placement of a fence no matter when he might perform, or whether he already had performed at time of trial.

Defendant has cited the following on the matter of nondelegability of the judicial function and on error as applied thereto: *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641, 645 (1933); 12 Tex.Jur.2d, p. 414, "Constitutional Law," Sec. 69, "(Judicial Power) —In general"; *Seagraves v. Green,* 116 Tex. 220, 288 S.W. 417, 425 (1926); *Crum v. Randall,* 198 S.W.2d 936 (Tex.Civ.App., Dallas, 1946, no writ history); *Brown v. Bay City Bank & Trust Co.,* 161 S.W. 23, 25 (Tex.Civ.App., Austin, 1913, no writ history); *Lewis v. Texas Department of Public Safety,* 407 S.W.2d 855 (Tex.Civ.App., Waco, 1966, no writ history); *Schunior v. Russell,* 83 Tex. 83, 18 S.W. 484, 488 (1892); *Westbrook v. Guderian,* 3 Tex.Civ.App. 406, 22 S.W. 59 (1893, no writ history).

There are other points of error brought forward by defendant upon which we have not written. Some complaints are good and some are not; but in any event we are satisfied that reversal is required as applied to complaints in points of error upon which we have written.

 In view of the fact that another trial will be required it is suggested relative to plaintiffs' demand for damages by reason of defendant's destruction of trees on their property that in the event no more is shown relative to the value of the trees at the retrial of the case the measure of damage would be the difference in market value of the plaintiffs' land immediately before and immediately after their destruction.

Judgment is reversed, with the cause remanded for a new trial.